A. LOUIS & Co., *et al.*, plaintiffs in error, *vs.* BAMBERGER, BLOOM & Co., *et al.*, defendants in error.

Although it is a general rule that on the coming in of the answer plainly and distinctly denying all the facts and circumstances upon which the equity of the bill is based, the Court will dissolve the injunction, yet in some particular cases, the Court will continue the injunction, though the defendant has fully answered the equity set up. The granting and continuing of the process must always rest in the sound discretion of the Court, to be governed by the nature of the case ; and this Court will not control the exercise of that discretion, except in a case where the discretion has been abused.

Injunction and Appointment of Receiver.   By Judge CLARKE.   Chambers.   Randolph County.   February, 1867.

The case made by the bill is as follows :

Joseph Schoenfeldt individually owed Bamberger, Bloom & Co., $5,227.41, for goods sold from 16th November, 1865, to 26th April, 1866, Bamberger, Staadhecker & Co., $919.53, for goods sold from 9th February, to 16th March, 1866, Hirsch & Flexner, $1,217.25 and interest, and Starr & Helburn, $706.70 for goods.   These creditors all live in Louisville, Kentucky, and at Schoenfeldt's instance, had shipped him these goods to Albany and Cuthbert, Georgia.

At the time of these purchases, and at the filing of this bill, Schoenfeldt was combining and confederating with A. Samuel Baer, of Randolph county, Georgia, to defraud said creditors, and they, as partners, received said goods at Albany and Cuthbert, and with other goods, which Schoenfeldt had bought of these creditors, exposed them for sale at said two towns, Schoenfeldt selling at Albany, and Baer at Cuthbert.

In pursuance of this fraudulent combination, on the 23d October, 1866, they combined with Adolph Louis & Co., of Nashville, Tennessee, and on that day, gave A. Louis & Co. three notes, signed by themselves individually, for $16,433.61, $1,803.95, and for $612.17, each due one day after date, (the second one endorsed "Stricker & Brothers") and gave them a mortgage on both stocks of goods, and transferred to them the books of account and evidences of debt of the Cuthbert

house, all as collateral security to secure said notes. These notes and mortgage and transfer are believed to be fictitious and fraudulent. They kept the goods, were selling them off below market prices, and converting the money, and the Albany stock had been clandestinely removed and mixed with the Cuthbert stock.

Schoenfeldt residing out of the State, and Baer thus converting the goods, these creditors sued out attachments against Schoenfeldt, returnable to February term of the County-Court of Randolph county, and on the 24th December, 1866, had the goods levied on by the sheriff, and then filed this bill for appointing a receiver, &c. After that, A. Louis & Co., by their agent, one Kuperman, foreclosed said mortgage, and procured the deputy sheriff to levy their mortgage *fi. fa.* on the same goods.

The goods are liable to injury by keeping, and would sell far below their value at sheriff's sale.

They therefore prayed injunction as to the sale under the mortgage *fi. fa.*, and that a receiver be appointed who shall sell the goods at retail, that the several defendants discover the truth touching these matters, and the fraudulent notes and mortgage and transfer be cancelled, &c., &c.

The Chancellor granted a rule *nisi* to show cause why the receiver should not be appointed, and why the injunction should not be granted.

Upon this hearing, the defendants read an affidavit of Wm. E. Smith, substantially stating that, on October 23d, 1866, Wm. Kuperman, of the firm of A. Louis & Co., Schoenfeldt, Baer and ———, agent of Stricker & Co., called on him to draft said mortgage; Stricker & Co.'s agent gave up the note for $1,803.95, held by his firm, and took in lieu of it Schoenfeldt & Baer's note for the same amount, of that date; this note was embraced in the mortgage; there was no dispute as to the amount due, the only hesitation was because Schoenfeldt feared the business might be stopped by foreclosure; to avoid that, it was stipulated in the mortgage, that, so long as the mortgage was not foreclosed, mortgagors should conduct the business as if no mortgage existed, paying the cash

received to A. Louis & Co., and transferring to them the accounts, if any goods should be sold on credit, A. Louis & Co. agreeing not to move in the matter unless other creditors did so ; that A. Louis & Co. had kept this pledge ; he saw the mortgage executed and delivered.

They also read an affidavit of Baer, affirming that the notes and mortgage were not fictitious, but that Schoenfeldt did really owe A. Louis & Co. the two notes for $16,433.61 and $612.17, for goods purchased of them ; that it was an honest effort to secure A. Louis & Co., (but without defrauding their other creditors) so that they might carry on their business, believing that if they were allowed to do so, they could pay all of the firm debts ; the other note expressed the true amount due Stricker & Co., and the mortgage was *bona fide* made to secure it also, and that "but for the conduct of J. Schoenfeldt," he believed the business might have been carried on, and all the debts paid.

Schoenfeldt had previously answered the bill, and his answer was also read. It admitted that he was a citizen of Indiana, in business for some time past in Georgia, that he individually purchased from the several complainants goods, and owed them therefor the amounts charged, and that the goods were shipped as charged.

He denied any combination with Baer for fraud, averring that his credit was then good, and he thought he could pay all his debts ; that the goods were shipped to Albany, and when the Cuthbert store was opened, he intended that the business should be in his name, but that Baer proposed to conduct the business in his name because he was known, and Schoenfeldt was unknown in Cuthbert ; complainants did not know Baer in said transactions, but without their knowledge, and without his putting any money into the concern, Baer was his constituted co-partner, though he continued to buy goods on his individual credit, not then believing (but now believing) that Baer intended to defraud the creditors ; the mortgage to a large extent, covers a fictitious amount ; they did not owe A. Louis & Co., anything like the amount expressed in the mortgage, it was so given upon the representation of A. Louis &

Co.'s agent, that it was necessary to keep off other creditors; the amount due A. Louis & Co. by him, and him and Baer, was unsettled, but it did not exceed $11,000, (he thought it was less) a considerable part of which has since been paid; he would not have signed the mortgage, but for Baer's representing that there were assets sufficient to pay the debts; all the goods had been moved to Cuthbert, and many sold; (at what prices he did not know) Baer made false invoices of those shipped from Albany; he thought it proper that a receiver be appointed.

The chancellor appointed a receiver and granted the injunction. Subsequently other answers were filed.

Schoenfeldt filed a second answer, differing from the first in these particulars : He said satisfactory arrangements had been made with complainants, or most of them, by which he believed said claims would be settled and discharged; after the formation of the partnership, goods were generally charged to the firm, sometimes to Schoenfeldt & Baer, or J. Schoenfeldt & Co., and at other times, and by other creditors, to A. S. Baer & Co., those he bought from complainants were upon his individual credit, and sent to Albany, and part of them had gone to Cuthbert; he and Baer owed A. Louis & Co. $15,270.07, besides interest, for goods, and upon accounting with Kuperman, fixed the amount at $16,433.61 ; this excess was by a mistake, produced by the absence of bills, &c., and had been since corrected by a credit, and they really owed the Stricker & Co. note, and put it into the mortgage; they also put in a note for $612.17, due A. Louis & Co., and that all this was done in good faith to secure those *bona fide* debts ; since that time Baer paid A. Louis & Co. $5,592.43, which had been credited and the mortgage *fi. fa.* was for $12.994.46, the true balance then due, but since the *fi. fa.* issued, he and Baer, had paid A. Louis & Co., $1,631.12. He stated that what he meant in his former answer, and what he intended to answer, was, that Schoenfieldt & Baer owed the Nashville house about $1,100, the balance of the debt due A. Louis & Co., was to the Cincinnati House, and he intended to have included the note for $612.17, as due A. Louis & Co., and to have included the Stricker & Bro. note.

He said that the mortgage was fairly made for a real debt, and without fraud, that he was embarrassed, but hoped to arrange his debts, and that Baer was similarly situated.

Wm. Kuperman, one of the firm of A. Louis & Co., also answered the bill.   He denied all combination, stated that the mortgage was for a *bona fide* debt, and substantially gave the same figures last given by Schoenfeldt as the basis of the settlement, states how the mistake occurred, by not having the bills of the Cincinnati house.   He set up that a good note for $2,825 on Mrs. Pace, of Dougherty county, was due by complainant to Schoenfeldt as a credit, which had not been allowed, that there were about $30,000 worth of goods in the two stores, bought of various parties, and he did not believe over $500 or $600 worth of the original goods bought from complainants were on hand in Cuthbert.   He thought a speedy, public sale, was proper, and the appointment of a receiver improper.

Baer's answer, also of file, is in substance, the same as Kuperman's, with a positive denial of any fraud in removing the goods, in making the mortgage, &c., &c.   He removed them to get a better market, sold them at a reasonable profit, for cost, and applied them to A. Louis & Co.'s claim, and but for Schoenfieldt's conduct, bringing down upon them the attachments, he believed they could and would have paid all their debts.   He favored an early sale by the sheriff.

These answers having come in, a motion was made by defendants to dissolve the injunction, and to set aside the appointment of a receiver.

At this hearing, the pleadings and affidavits already mentioned, were read, as was also an affidavit from Arthur Hood, Esq., (for complainants) in substance, as follows: He drafted Schoenfeldt's first answer, that portion of the indebtedness of Schoenfeldt & Baer to A. Louis & Co., was fully and freely discussed between Schoenfeldt and himself; Schoenfeldt stated that he did not think it exceeded $9,000, including the debts of both the Nashville and Cincinnati houses, but asked to put it at $1,100, saying that would not only cover the firm debt to both said houses, but his individual debt to

the Cincinnati house, created before he and Baer were part-
ners ; he was very frank and free in his statements, and did
not hesitate to state that the mortgage covered a fictitious
amount, and was made to cover up the assets of the firm, so
that they might continue business without interruption by
other creditors.

After argument had, the chancellor refused to set aside the
order appointing the receiver, or to dissolve the injunction.
Upon each of these motions a bill of exceptions was made
out and certified, and they come to this Court consolidated.

The plaintiffs in error contend that the bill contained no
equitable foundation for injunction or the appointment of a
receiver ; or if they did, that in each instance the affidavits
and answers swore off that equity, and therefore that the
chancellor erred in holding the contrary, &c.

STROZIER & SMITH, DOUGLASS & PLATT, for plaintiffs in
error.

A. HOOD, and H. FIELDER, for defendants in error.

WALKER, J.

The granting and continuing of an injunction must always
rest in the sound discretion of the Judge, according to the
circumstances of the case.   Rev. Code, Sec. 3153.   Here are
various creditors seeking to enforce their respective claims
against the effects of the debtors.   The Court, by its proper
officer, has possession of the goods, and can so shape its action
as to allow all to be heard in vindication of their claims, and
award the funds which may be raised, to the payment of
those claims which may be entitled thereto.   By this course,
a multiplicity of suits may be avoided, and ample and com-
plete justice be done in the premises.   We fully recognize the
general rule, that on the coming in of the answer, plainly and
distinctly denying all the facts and circumstances upon which
the equity of the bill is based, the Court will dissolve the
injunction ; but in some particular cases, the Court will con-
tinue the injunction though the defendant has fully answered

the equity set up.    The granting and continuing of the process must always rest in sound discretion, to be governed by the nature of the case., See Coffee vs. Newsom, 8 Ga. Rep., 449.   Holt vs. The Bank, 9 Ga. Rep., 554.   This Court is not disposed to control the discretion of the chancellor, except in case of abuse of his discretion, and as we see no abuse here, we will not interfere with his ruling.

Judgment affirmed.